**UNITED STATES of America,
Appellee,**

**v.**

**Raymond LLANES, Appellant.**

**No. 275, Docket 30712.**

United States Court of Appeals
Second Circuit.

Argued Jan. 5, 1967.

Decided Feb. 7, 1967.

---

14. See Bauers v. Yeager, 261 F.Supp. 420 (D.N.J.1966).

Myles J. Ambrose, New York City, for appellant.

Elkan Abramowitz, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Douglas S. Liebhafsky, Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

A jury in the District Court for the Southern District of New York found appellant Llanes guilty under a single

count indictment charging that he had knowingly received, concealed, and facilitated the transportation and concealment of 35 grams of illegally imported heroin, knowing the same to have been illegally imported, in violation of 21 U.S.C. §§ 173 and 174.[1] There was ample testimony by narcotics agents to support a conclusion that Llanes had done the physical acts charged; moreover Llanes, taking the stand in his own defense, admitted that he had heroin concealed on his person when arrested. His counsel conceded at trial that the sole issue was whether Llanes knew the heroin "to have been imported or brought into the United States contrary to law."

Under questioning by his assigned counsel Llanes said he did not know where his connection had gotten the heroin or whether it had been illegally imported. Counsel requested the court to charge that the jury might convict only if it disbelieved the latter statement; when this was denied, he unsuccessfully sought a charge that "if the jury believes the defendant's testimony that he did not know that the heroin had been illegally imported, then the government has failed to prove an essential element of the crime and the jury should acquit."

The judge told the jury that there were three elements in the crime—knowing possession of heroin, illegal importation, and knowledge thereof, and that, as to the second and third elements, the last paragraph of § 174 permitted but did not require it to infer, if it found that Llanes had possession of the heroin, "that the defendant knew that the heroin was imported contrary to law unless on all of the evidence in the case, submitted both by the government and by the defendant, you conclude that the defendant has explained his possession of the heroin to your satisfaction." Elaborating on this, he instructed the jury to consider "all of the evidence, including the testimony of the defendant, to the extent that you find the defendant's testimony to be credible, and all of the evidence of the government and * * * then determine in your own minds whether the defendant has satisfactorily explained his possession of the heroin and that he did not know that it had been illegally imported." Continuing, he told the jury that if it found the government had not proved each element of the crime beyond a reasonable doubt, it must acquit; he emphasized that the jury must consider the defendant's knowledge, "that he knowingly had pos-

---

1. Familiar as these statutes are, the point of this appeal makes it desirable to quote them in relevant part:

§ 173. *Importation of narcotic drugs prohibited; exceptions; crude opium for manufacture of heroin; forfeitures.*—It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction; except that such amounts of crude opium and coca leaves as the Commissioner of Narcotics finds to be necessary to provide for medical and legitimate uses only may be imported and brought into the United States or such territory under such regulations as the Commissioner of Narcotics shall prescribe, but no crude opium may be imported or brought in for the purpose of manufacturing heroin. * * *

§ 174. *Same, penalty; evidence.*

Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

session and knowingly knew that the heroin had been imported into the United States," adding "The Government must prove to you that the defendant had this knowledge." Defense counsel, conceding that "perhaps I am asking for a whole loaf when I have half already," asked the judge to "express in a little more detail the question of what constitutes a satisfactory explanation." When the judge declined, saying he had done all he could, counsel reminded of his earlier requests.

■ The judge's difficulty stemmed from the variety of purposes served by the final paragraph of § 174 and the ineptness of the language of the "unless" clause as to two of them. To us there appear to be four elements of the crime rather than the conventional three: (1) doing one of the physical acts limned in the statute, (2) doing such an act "fraudulently or knowingly," (3) illegal importation of the narcotic drug and (4) knowledge of the illegal importation. The final paragraph of § 174 makes possession of the narcotic drug sufficient evidence as to all four elements "unless the defendant explains the possession to the satisfaction of the jury."

The "unless" clause is readily applied to the first two elements of the crime. Where there is an issue whether the defendant had done one of the specified physical acts, he can negate the inference from possession, e. g., by explaining that a friend had tossed him a package, saying "Keep this dope for me," only seconds before his arrest. Where the issue is knowledge that the substance with which the defendant was performing a prohibited act was a narcotic drug, he can negate the inference, e. g., by explaining that he thought the substance was something else, as in United States v. Christmann, 298 F.2d 651 (2 Cir. 1962). Although the "unless" clause less readily

fits the third issue, whether the drug was illegally imported, the clause is rarely invoked on this point, at least as to heroin, since it is hard to think of an "explanation" that would negate the inference of illegal importation of a drug that cannot be lawfully produced in the United States.

■ The serious problem arises in applying the "unless" clause to the final element, knowledge of illegal importation. As to this the most satisfactory explanation would seem to be that the defendant honestly believed the narcotic drug had been produced within the United States; the next best would be that, without "a conscious purpose to avoid enlightenment," [2] he did not know the drug had been illegally imported. The difficulty is that jurors would be likely to regard the phrase "unless the defendant explains the possession to the satisfaction of the jury" as requiring something more, such as the kind of evidence suggested in the hypothetical cases put above or, as said in Chavez v. United States, 343 F.2d 85, 88 (9 Cir. 1965), "substantial evidence showing that the drug had been legally imported or that defendant's possession of it was lawful." Perhaps a sophisticated lawyer might understand an instruction along the latter lines as encompassing lack of knowledge of illegal importation since in the absence of such knowledge the possession would not be unlawful, as appears to have been thought in United States v. Moe Liss, 105 F.2d 144, 146 (2 Cir. 1939). But this would be such a cumbersome and obscure method of presenting to a jury the bearing of the final paragraph on knowledge of illegal importation that we prefer the contrary rule of United States v. Turner, 65 F.2d 587 (2 Cir. 1933); Griego v. United States, 298 F.2d 845 (10 Cir. 1962); and Chavez v. United States, 343 F.2d 85 (9 Cir. 1965).[3] Where a defend-

2. See Griego v. United States, 298 F.2d 845, 849 (10 Cir. 1962), citing United States v. General Motors Corporation, 226 F.2d 745, 749 (3 Cir. 1955).

3. Since, in our view, United States v. Moe Liss, supra, was itself a departure from

this court's earlier decision in United States v. Turner, supra, despite the distinction it attempted, we feel free to follow what we regard as the sound rule of the recent *Griego* and *Chavez* decisions without referring the issue to the court *in banc.*

ant denies knowledge of illegal importation, the jury should be instructed substantially as indicated by Judge Breitenstein in Griego, supra, 298 F.2d at 849.[4]

■■ We recognize, as Judge Hamley did in Chavez, 343 F.2d at 89–90, that requiring a more meaningful instruction on this subject may somewhat mar the full beauty of 21 U.S.C. §§ 173 and 174 for prosecutors. But, as there pointed out, the impairment is partial only since the defendant frequently does not take the stand, or makes some other defense, or may not be believed. Moreover, there are cases, of which United States v. Nuccio, 373 F.2d 168 (2 Cir. 1967), is a recent example, where the Government can prove knowledge of illegal importation by direct evidence, and it can always challenge the defendant's denial by supplementing the statutory inference with proof that almost all heroin has been illegally imported, see Hernandez v. United States, 300 F.2d 114, 118–119 n. 11 (9 Cir. 1962), and is generally known to have been so. Furthermore 21 U.S.C. §§ 173–174 is only one weapon in the Government's anti-narcotics arsenal, see, e. g., 26 U.S.C. §§ 4704 and 4705, and it would not be a source of overmuch regret if the principle here recognized should lead Congress to review and revise a statute that has been so difficult to apply and makes guilt turn on a factor so unrelated to the evil. In any event, as said by the Ninth Circuit in Chavez, 343 F.2d at 90:

"The essential elements were written into the statute by Congress. The courts have no warrant to read one of those elements out of the statute because of a feeling that it is too difficult of proof, or that the presumption establishing the element prima facie is too easy to rebut."

■■ It remains to apply the principle here recognized to the case at bar. The judge was warranted in declining to give the requested instructions since they failed to include the element of "a conscious purpose to avoid learning the source of the heroin," 298 F.2d at 849. Still we might reverse because of the instruction that the jury must determine both "whether the defendant had satisfactorily explained his possession of the heroin *and* that he did not know that it had been illegally imported" (emphasis supplied), on the basis that the conjunctive could have misled the jury under the circumstances of this case, if that instruction had stood alone. But the judge returned to the subject, emphasizing in a number of ways that the jury must be satisfied beyond a reasonable doubt of the defendant's knowledge of illegal importation. We are thus satisfied that the jury realized it could not convict unless, after taking into account both the statutory inference and Llanes' denial of knowledge but without any other requirement, it was convinced beyond a reasonable doubt that he knew the narcotic drug had been illegally imported.

■ Llanes also objects that in attacking the credibility of his denial of knowledge of illegal importation on summation, the prosecutor told the jurors to ask themselves "what was New York State's heroin production last year? What was any state's heroin production last year?" We agree that if the Govern-

---

4. "In the circumstances of this case the jury should be instructed on the tendered defense of no knowledge and told that the defense is not available if the jury finds from all the evidence beyond a reasonable doubt that the defendant had a conscious purpose to avoid learning the source of the heroin. Further, to be effective as a defense the denial of knowledge must be believed by the jury. If the jury finds the defense available and believes the denial, the defendant should be acquitted. If the jury finds the defense not available or disbelieves the denial, then, in accordance with the second paragraph of Section 174, the jury may convict if it is satisfied beyond a reasonable doubt that the defendant had possession."

To this we would add that the second paragraph merely permits the drawing of an inference but only that, and that the jury must be satisfied, on knowledge as on all other elements, beyond a reasonable doubt.

ment wishes to go beyond a reference to the statute to show that the narcotic drug must have been illegally imported, it ought to produce a witness rather than rely on argument. But an objection was promptly sustained, defense counsel neither asked the court to instruct the jury to disregard the remark nor moved for a mistrial, cf. United States v. Agueci, 310 F.2d 817, 836–838 (2 Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1013, 10 L. Ed.2d 11 (1963), and, for reasons indicated above, there was no real prejudice in any event.

Llanes' final points concern alleged impairment of his right to counsel. The Legal Aid Society had been assigned to represent him and had succeeded in obtaining an order to suppress the narcotics, which, however, this court reversed on March 8, 1966, 357 F.2d 119. When the case appeared on the trial calendar on March 28, the Government announced readiness for March 30. Defendant's experienced trial attorney said the date was agreeable but told Judge Murphy that Llanes was dissatisfied because the Society had been unable to obtain a stay from this court pending a possible application for certiorari, and the Society was uncertain whether it should continue to represent the defendant. The judge declined to make a different appointment. On March 30 Llanes renewed his request for appointment of new counsel; this was denied and the case referred to Judge Bonsal for trial.

We and other courts of appeals have repeatedly made clear that the right to counsel "cannot be * * * manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." United States v. Bentvena, 319 F.2d 916, 936 (2 Cir.), cert. denied, Ormento v. United States, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963); United States v. Abbamonte, 348 F.2d 700 (2 Cir. 1965), cert. denied, 382 U.S. 982, 86 S.Ct. 557, 15 L.Ed.2d 472 (1966); Cleveland v. United States, 116 U.S.App.D.C. 188, 322 F.2d 401 (D.C.Cir.), cert. denied, 375 U.S. 884, 84 S.Ct. 157, 11 L.Ed.2d 114

(1963); United States v. Burkeen, 355 F.2d 241 (6 Cir. 1966), cert. denied, 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966). Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay. Although Judge Murphy did not permit Llanes to make any statement on March 30, he had heard Llanes only two days earlier and accepted Llanes' previously prepared written request which failed to set forth any substantial reason for his wish to have the Legal Aid Society relieved. The judge's refusal to appoint a new attorney for him was entirely proper, and Llanes made no request that he be allowed to represent himself.

Appellate counsel further advises us that Llanes now claims he told his trial attorney he did not wish to testify but was in effect forced into doing so by counsel's opening statement that he would. We will not pass on such a claim without the full development of the facts that a proceeding under 28 U.S.C. § 2255 would afford.

Affirmed.