UNITED STATES of America,
Plaintiff, Appellee,

v.

Juan Rivera MONTIJO, Defendant,
Appellant.

No. 7285.

United States Court of Appeals,
First Circuit.

April 13, 1970.

Sutton Keany, San Juan, P. R., by appointment of the Court, for appellant.

Philip Wilens, Atty., Dept. of Justice, with whom Francisco A. Gil, Jr., U. S. Atty., Will Wilson, Asst. Atty. Gen., and Thomas O'Leary, Atty., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted on two counts of receiving, concealing and facilitating the transportation of illegally imported narcotic drugs in violation of 21 U.S.C. §§ 171, 173 and 174 (1964). He now attacks his convictions on the grounds that (1) § 174 infringes the privilege against self-incrimination and (2) the grand jury testimony of a key government witness was unavailable for impeachment purposes because grand jury proceedings are not recorded in the District of Puerto Rico.

■■ Defendant's first objection is related to the trial court's charge defining the term "conceal" as used by § 174. In relevant part, the court instructed the jury that:

"the willful failure of a person who is in possession of any untaxed narcotic drug * * * to reveal to some internal revenue official the existence of such narcotic drug, amounts to a con-

cealment within the meaning of the statute. * * * "

Defendant claims that this is an accurate statement of the law and that, since possession of narcotic drug is a crime under Puerto Rican law, 24 L.P.R.A. § 974z, the statute violates his privilege against self-incrimination.[1]

The difficulty with defendant's position is that the trial court's charge is not a valid construction of § 174. The instruction followed a form in Mathes & Devitt, Federal Jury Practice and Instructions § 39.07 (1965), which was held erroneous in Verdugo v. United States, 402 F.2d 599, 605–606 (9th Cir. 1968). There the Ninth Circuit construed the term "conceal" in a more conventional sense as meaning "to hide or keep from sight or view." It disapproved the language of the pattern instruction dealing with the failure to disclose possession to internal revenue officials on the ground, inter alia, that Congress did not intend any interrelationship between § 174 and the narcotic tax statutes. We agree with the Ninth Circuit's reading of the statute.[2] There is no reason to conclude that

Congress intended the term to have a meaning other than that which it customarily carries. Moreover, we must, where possible, construe the statute to avoid constitutional difficulties. Since the statute does not require the disclosure of possession, illegal under local law, we find no violation of the privilege against self-incrimination.[3]

Defendant next objects to the government's reliance on the inference in § 174. A conviction under that section requires proof of four elements: (1) the knowing or fraudulent (2) reception, concealment or facilitation of the transportation of a narcotic drug (3) with knowledge that it was (4) illegally imported into the United States. Verdugo v. United States, *supra*, 402 F.2d at 603; United States v. Llanes, 374 F.2d 712, 715 (2d Cir), cert. denied, 388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967). Where the government establishes the fact of possession, however, the statute provides that the other elements of the crime may be inferred "unless the defendant explains the possession to the

1. The reporting of possession of untaxed narcotics to revenue officials must necessarily come to the attention of Puerto Rican authorities. Under 26 U.S.C. § 4735(a) (1964), the administration in Puerto Rico of Internal Revenue Code provisions concerning narcotic drugs is delegated to officials of the Commonwealth. Hence, if the court's charge was correct, serious constitutional problems would be raised, as compliance with the statute might entail a substantial risk of self-incrimination. *See* Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

2. We cannot forbear remarking that this is the third time we have had occasion to find erroneous instructions in this work. Our district judges would be well advised to take note.

3. In his main brief, defendant did not argue that the charge was erroneous and he

raises the point for the first time in his reply brief. The government contends that he is precluded from raising the issue by his failure to object to the instruction at trial under Fed.R.Crim.P. 30. Defendant argues that he is nevertheless entitled to raise the point under Leary v. United States, 395 U.S. 6, 32, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). *Leary*, however, is inapposite. There counsel had relied on the error raised in the Supreme Court as a ground for a motion for a directed verdict at the close of the government's case and in a motion for new trial. The Court of Appeals had dealt with the argument on the merits. Here the validity of the charge was never considered by the trial court. Moreover, the plain error rule, Fed.R.Crim.P. 52(b), is inapplicable. The defense was not predicated on the nature of the concealment. Defendant was therefore not prejudiced by the instruction. *See generally* 3 C. Wright, Federal Practice and Procedure: Criminal § 856 (1969). Hence, the error in the trial court's charge is unavailable to defendant.

satisfaction of the jury." 21 U.S.C. § 174.

This provision, defendant argues, violates his Fifth Amendment privilege against compulsory self-incrimination on two grounds. First, defendant maintains that this statute, like the registration statutes involved in *Haynes, Grosso*, and *Marchetti*, requires him to reveal his crimes to local authorities in order to comply with federal law. This argument rests on the proposition that only proof of compliance with federal narcotics laws constitutes a satisfactory explanation of possession. Since compliance would require disclosure of possession to Puerto Rican authorities, i. e., by registering, the statute is said to violate the Fifth Amendment. Defendant has, however, misapprehended the nature of the explanation contemplated by the statute. Even though a defendant may not have registered, the statutory inference may be rebutted by evidence tending to contradict the inferences of illegal importation, of knowledge thereof, or of the requisite intent concurrent with reception, concealment, or facilitation.[4] Hence defendant need not show that he has declared his guilt to local officials in order to escape conviction under federal law.

Going beyond this, defendant argues that any, or almost any, explanation which might be offered to rebut the statutory presumption would involve an admission of possession and hence prove incriminating under Puerto Rican law and that the Fifth Amendment is therefore a complete defense. Defendant's point seems to be that the presumption, coupled with the fortuitous coexistence of a Puerto Rican statute barring possession of narcotics under any circumstances, forces defendant to choose between silently suffering conviction under federal law or taking the stand and incriminating himself under local law. The statutory presumption, however, adds nothing to defendant's claim of self-incrimination. Congress may substitute inference for evidence only when it appears "with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, *supra*, at 36, 89 S.Ct. at 1548. Applying this standard, the Supreme Court has held that § 174 is valid insofar as it permits a juror to infer that heroin is a smuggled drug and that those who possess it are aware of its illegal origins. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). Given this holding, defendant is in no different position than anyone who risks self-incrimination in order to rebut legitimate inferences arising from evidence introduced at trial.

Our question is thus whether a defendant who must admit guilt under one statute in order to rebut a *prima facie* case under another statute has been compelled to incriminate himself in violation of the Fifth Amendment. Defendant's logic, if accepted, would virtually ban the use of statutory presumptions, no matter how legitimate the inference. For example, the presumption in a Dyer Act case stemming from the possession of a recently stolen automobile would be unconstitutional because one defense might involve proof of an intrastate theft and receipt. More importantly, defendant's theory would frustrate enforcement of federal statutes dealing with the interstate commerce aspects of an activity whenever a state banned the activity itself; a Mann Act prosecution would fall because of the possibility that the procurement for prostitution was wholly local. Finally, were we to accept defendant's reasoning, we would create a Fifth Amendment problem whenever an indictment contained a lesser included offense. Thus a murder defendant could invoke the privilege because of the chance that he might have to admit manslaughter in order to rebut evidence of malice aforethought.

---

4. Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); Verdugo v. United States, *supra*, 402 F.2d at 603 n. 3; United States v. Llanes, *supra*, 374 F.2d at 715; *see* Chavez v. United States, 343 F.2d 85, 90 (9th Cir. 1965); Griego v. United States, 298 F.2d 845, 848–849 (10th Cir. 1962).

We reject such a sweeping extension of the privilege. Defendant's theory fails because he and other defendants faced with the unpleasant task of rebutting a *prima facie* case are not "compelled" to incriminate themselves. Here the government has not attempted to force any admission, either through oral testimony or, as in the *Marchetti* trilogy, through written disclosures under registration statutes dealing with groups suspected of criminal activities. The defendant undoubtedly faces an uncomfortable dilemma, but, as the Supreme Court has pointed out,

"The same situation might present itself if there were no statutory presumption and a *prima facie* case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution. Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 472, 69 L.Ed. 904 (1925).

Defendant also argues that we should exercise our supervisory power [5] to reverse his conviction on the ground that the grand jury proceedings were not recorded and were therefore unavailable for the cross-examination of a key government witness. *See* Schlinsky v. United States, *supra* n. 5, 379 F.2d at 740. We are not prepared to take such a step at this time.[6]

Affirmed.

[5.] Defendant acknowledges that recording of grand jury proceedings is not constitutionally required. Schlinsky v. United States, 379 F.2d 735 (1st Cir.), cert. denied, 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed. 2d 265 (1967).

[6.] Defendant is in no way prejudiced by our failing to deal with this issue on the merits. Had we adopted defendant's contention, we would not have been inclined

to apply the rule retrospectively or to the case at bar because of the disruption which such a course would entail. *See, e. g.,* United States v. Youngblood, 379 F. 2d 365, 370 (2d Cir. 1967); United States v. Gramolini, 301 F.Supp. 39, 42 (D.R.I.1969); United States v. Arcuri, 282 F.Supp. 347, 350 (E.D.N.Y.), aff'd, 405 F.2d 691 (2d Cir. 1968), cert. denied, 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed. 2d 227 (1969).