**Pedro COLON, Petitioner,**

v.

**Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent.**

**No. 84 Civ. 3144 (WCC).**

United States District Court, S.D. New York.

Oct. 27, 1989.

Pedro Colon, Attica, N.Y., pro se.

Robert T. Johnson, Dist. Atty., Bronx County, Bronx, N.Y. (Steven R. Kartagener, Jeremy Gutman, Asst. Dist. Attys., of counsel), for respondent.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Pedro Colon, who is currently incarcerated at the Attica Correctional Facility, has petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (1982) on six separate grounds. For the reasons outlined below, his petition is denied.

## BACKGROUND

Petitioner Pedro Colon was convicted of murder in the second degree after a jury trial in the Supreme Court of the State of New York, Bronx County. Petitioner was sentenced to an indeterminate term of imprisonment of from fifteen years to life. On May 26, 1983, the Appellate Division, First Department, unanimously affirmed petitioner's conviction without opinion. *People v. Colon*, 94 A.D.2d 982, 463 N.Y. S.2d 665 (1st Dept.1983). On July 27, 1983, Associate Judge Bernard S. Meyer of the New York Court of Appeals denied petitioner's application for leave to appeal to that court. *People v. Colon*, 60 N.Y.2d 590, 467 N.Y.S.2d 1036, 454 N.E.2d 131 (1983). On December 8, 1983 the Supreme Court of the State of New York, denied petitioner's motion pursuant to New York Criminal Procedure Law § 440.20, to set aside the conviction on the ground that the prosecution had knowingly presented false testimony at trial. On January 17, 1984, Associate Justice Arnold L. Fein of the Appellate Division, First Department denied petitioner's application for leave to appeal the order denying petitioner's motion to set aside the judgment. Associate Judge Bernard S. Meyer of the Court of Appeals dismissed petitioner's application to appeal Associate Justice Fein's order on February 28, 1984. *People v. Colon*, 61 N.Y.2d 908, 474 N.Y.S.2d 1030, 462 N.E.2d 1208 (1984). Petitioner's first petition for a writ of habeas corpus was denied by this Court in an opinion and order dated December 15, 1986 for containing both exhausted and unexhausted claims. Petitioner was given leave to reinstate the action *nunc pro tunc* by filing an amended complaint deleting the unexhausted claim, which petitioner subsequently did.

In his *pro se* motion, petitioner has asked this court for a writ of habeas corpus based on six separate grounds: (1) the proof at trial did not establish petitioner's guilt beyond a reasonable doubt; (2) petitioner received ineffective assistance of counsel; (3) the court denied petitioner's request to submit a lesser included offense; (4) the court denied petitioner's request to substitute attorneys; (5) the court denied petitioner's request for daily trial minutes; and (6) the prosecution knowingly presented false evidence.

## INSUFFICIENCY OF EVIDENCE

Colon first claims that the evidence adduced at his trial was insufficient to establish his guilt beyond a reasonable doubt. A defendant challenging the sufficiency of the evidence presented at his state criminal trial is entitled to federal habeas corpus relief only if the court, viewing the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), finds that "no rational trier of fact could have found proof beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. at 2791–92. The Court concludes that a rational factfinder could have found the petitioner guilty of murder in the second degree under New York law. Thus, petitioner's claim must fail.

It was uncontroverted at trial that petitioner had fatally shot Gary Burl. The crucial factual dispute concerned whether petitioner was justified in causing Burl's death. The evidence introduced by the prosecution in their direct case showed that shortly after midnight of March 22, 1980, Esther Seegars and Earl John went into the hallway outside of their apartment building on 65 Featherbed Lane in the Bronx after hearing a series of what sounded to be gunshots. Both Seegars and John saw the petitioner holding Burl against the wall left of the entrance to the apartment building. Tr. at 42. Petitioner's left hand was around Burl's throat and petitioner was holding a pistol against Burl's side with his right hand. Tr. at 44, 116. Both heard the petitioner and Burl arguing over whether Burl took the petitioner's watch. Tr. at 46, 139. Seegars heard Burl say to petitioner, "Why you shooting me, man?" Tr. at 47. John asked the two to stop fighting. After a few minutes, petitioner and Burl left the hallway, although John's and Seegars' testimony differed as to whether Burl or the petitioner left the hallway first. According to Seegars, petitioner left the building first and Burl then asked to be taken to the hospital. Tr. at 48. John testified that petitioner left before Burl. After either Burl or petitioner left the hallway, both Seegars and John went back into the apartment to get their shoes. When they returned, Burl was around the corner, lying in the gutter saying that he had been shot. John helped Seegars place Burl in a cab and Seegars rode with Burl to the hospital. Burl died a few hours later. Petitioner was arrested on April 3, 1980 and identified by Seegars and John in a line-up.

Dr. Perves, an expert witness from the Medical Examiner's office, testified that there were four gunshot wounds to the body; one to the chin, two to the chest, and one to the abdomen. Tr. at 69. The first shot showed signs of "stippling," a discoloration to the skin caused by gunshot from a distance of two feet or less.

The defense's primary witness was the petitioner. Petitioner testified that he left his home in Manhattan at 11:30 p.m. and went to a bar on Featherbed Lane in the Bronx. After ten minutes in the bar, petitioner left to go take drugs in a basement apartment at 65 Featherbed Lane. Finding the apartment closed, petitioner returned to the lobby of the building to go to the third floor apartment. As he stepped in the lobby, Burl was standing by the steps leading into the hallway which petitioner had to walk through to reach the third floor apartment. Tr. at 212–13, 229–30. According to petitioner, Burl pulled a pistol out and told petitioner to move to the back of the wall. Burl asked him if he had any drugs or money. Tr. at 213. When petitioner responded that he did not, Burl then forced him to face the wall and robbed him of seven dollars, a bracelet, and a silver chain. Petitioner turned around after a "minute or so" and Burl lifted the gun, causing petitioner to grow so frightened that he "wet his pants." Tr. at 215. Burl then struck petitioner with the gun and petitioner fell to the ground. The gun also fell and a scuffle ensued. Petitioner picked up the gun and ran to the lobby door. Burl jumped on him and pulled him back into the lobby. The two scuffled some more, and petitioner shot Burl during the altercation. Tr. at 215–17. Petitioner testified that they continued to scuffle for a few more minutes. Burl then stopped fighting and walked out the door. Petitioner dropped the gun, left, and walked home to Manhattan.

The prosecution's version of the events, that petitioner shot Burl without justification, could readily have been believed by a rational jury for a number of reasons. Petitioner admitted on the stand that neither John nor Seegars had reason to lie as to the events that occurred. Discrepancies in the facts as related by John and Seegars were minor and unrelated to whether petitioner was justified in shooting Burl; they related primarily to whether Burl or petitioner left the hallway first after the shooting. Additionally, the jury had sufficient basis to doubt petitioner's veracity. Petitioner testified that he was robbed of seven dollars, yet only four dollars were found in Burl's possession when he was brought to

the hospital directly after the shooting. The bracelet found in Burl's possession bore the inscription "Andrea," yet petitioner failed to mention this on either direct or cross examination when describing the items stolen from him. On cross-examination, the petitioner admitted that he had denied recognizing a photograph of the deceased which was shown to him by a detective at the time of his arrest. Petitioner also told the detective, in response to questioning, that he had not been in the Bronx since the summer of 1979. Finally, the gunshot wounds were in different positions on Burl's body, belying petitioner's claim that the gun went off quickly in succession while the two were struggling.

Viewing the evidence in the light most favorable to the prosecution, a rational jury could certainly conclude beyond a reasonable doubt that petitioner intentionally shot and killed Burl without justification.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Colon asserts that his trial counsel was ineffective based on three grounds. First, he alleges that counsel failed to request a charge on the appropriate lesser included offenses of reckless manslaughter and manslaughter with intent to cause serious physical injury. Second, counsel failed to request an instruction on justification under New York Penal Law § 35.15(2)(b) which provides that a person may use deadly force in self-defense if he reasonably believes he is the victim of a robbery. Third, petitioner claims that his counsel was unprepared for trial.

### A. *Failure to Request Charge on Lesser Included Offenses*

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) established a two-prong inquiry for determining whether a defendant's sixth amendment right to effective counsel has been violated. First,

the attorney's performance must be reasonable under prevailing professional norms, and second, if deficient, the deficiency must be so serious that it prejudiced the defendant by presenting a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. The Second Circuit has declared that effective assistance of counsel means "reasonably competent assistance"; a defense counsel's representation must be within the range of competence reasonably expected of attorneys in criminal cases. *Trapnell v. United States*, 725 F.2d 149, 153 (2d Cir.1983).

Applying this standard to petitioner's first claim, this Court finds that counsel was not ineffective under either of *Strickland's* prongs. Petitioner was not entitled to instructions on the lesser included offenses and even if petitioner were so entitled, counsel's failure to request the charges would not constitute ineffective assistance of counsel.

■ Petitioner's counsel failed to request that the court charge manslaughter in the first degree based on an intent to cause serious physical injury, New York Penal Law § 125.20(1), or manslaughter in the second degree based on recklessly causing the death of another, New York Penal Law § 125.15(1), as lesser included offenses of murder in the second degree.[1]

■ In the context of the present case, intent to cause serious physical injury and reckless manslaughter were not lesser included offenses. This analysis first requires that it must be theoretically impossible to commit the greater crime without committing the lesser. This first requirement is met. The fact that the degree of culpability specified for each offense differs from the other does not foreclose giving a lesser included charge on grounds of impossibility. *People v. Green*, 56 N.Y.2d 427, 432, 452 N.Y.S.2d 389, 437 N.E.2d 1146 (1982); *see also People v. Murray*, 40

---

1. Petitioner also faults counsel's request for a charge of manslaughter in the first degree under an "extreme emotional disturbance" theory under New York Penal Law § 125.20(2). Although ultimately rejected by the jury, this defense was not inappropriate. Petitioner had testified that his fear caused him to lose control of his bodily functions upon sight of the gun.

N.Y.2d 327, 335, 386 N.Y.S.2d 691, 353 N.E.2d 605 (1978), *cert. denied,* 430 U.S. 948, 97 S.Ct. 1586, 51 L.Ed.2d 796 (1977).

Second, there must be a reasonable view of the evidence in the particular case that would permit the jury to conclude that the defendant committed the lesser but not the greater offense. *Green,* 56 N.Y.2d at 430, 452 N.Y.S.2d 389, 437 N.E.2d 1146. Under N.Y.Crim.Proc.Law § 300.50, if there is no reasonable view of the evidence which would support such a finding, the court may not submit such lesser offense. Because this second requirement is not met with regard to either intent to cause serious injury or reckless manslaughter, counsel properly refused to request them as lesser included offenses.

■ In this case, there is no reasonable view of the evidence to justify a charge of manslaughter based on an intent to cause serious physical injury. The facts show that petitioner shot Burl four times; once in the chin, twice in the chest, and once in the abdomen. At least the first shot was within a range close enough to cause stippling. The number and location of the bullet wounds and petitioner's proximity to Burl at the time of the shooting establish that petitioner intended to do more than merely seriously injure Burl.

■ Nor does a reasonable view of the evidence justify a charge of reckless manslaughter. Reckless manslaughter requires a showing that a defendant was aware of and consciously disregarded a known risk. *People v. Cruciani,* 36 N.Y.2d 304, 367 N.Y.S.2d 758, 327 N.E.2d 803 (1975). Petitioner's firing of the four shots, at least one of which was in close range, evidenced more than a conscious disregard of risk, namely an intent to kill. The present facts are sufficiently different from those in *People v. Davis,* 142 A.D.2d 791, 530 N.Y.S.2d 685 (3d Dept.1988), where defendant testified that while the victim held a knife the entire time, defendant merely attempted to push the knife away during a struggle in which the victim was stabbed several times. The facts in this case do not warrant a charge of reckless manslaughter.

■ Even if it would have been proper for the court to charge the lesser offenses, the failure of petitioner's counsel to do so in this case amounted to a tactical choice not rising to the level of ineffective assistance of counsel. A failure to request charges on all possible lesser included offenses may be proper trial strategy. *See Ford v. Harold Smith,* No. 77 Civ. 1021, slip op. (S.D.N.Y. Oct. 31, 1977); *United States ex rel Johnson v. Vincent,* 507 F.2d 1309 (2d Cir.1974), *cert. denied,* 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975). Submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt. Counsel may have appropriately wished to avoid this possibility and this decision therefore did not constitute ineffective assistance of counsel.

### B. *Failure to Request a Justification Defense*

■ Petitioner's counsel also did not request a charge that a person may use deadly force against another whom he reasonably believes "is committing or attempting to commit a ... robbery" under New York Penal Law § 35.15(2)(b), although counsel requested and received a justification defense instruction pursuant to New York Penal Law § 35.15(2)(b) which states that a person may use deadly force against an individual whom he reasonably believes is using or is about to use deadly force. Petitioner alleges that counsel's failure to do so constituted ineffective assistance of counsel. Cases cited by petitioner to support his claim that a charge was appropriate are inapplicable to the facts of this case, because no actual robbery occurred in those cases prior to the use of self defense. Rather, the parties could have reasonably believed that a robbery was in progress. *See People v. Huntley,* 87 A.D.2d 488, 452 N.Y.S.2d 952 (4th Dept.1982), aff'd, 59 N.Y.2d 868, 465 N.Y.S.2d 929, 452 N.E.2d 1257 (1983); *People v. Davis,* 74 A.D.2d 607, 424 N.Y.S.2d 502 (2nd Dept.1980).

Because petitioner was not entitled to such a charge under state law, counsel's actions did not amount to ineffective assistance of counsel. A defendant is entitled, for purposes of a charge, to have the evidence viewed in the light most favorable to him. *People v. Steele*, 26 N.Y.2d 526, 529, 311 N.Y.S.2d 889, 260 N.E.2d 527 (1970). However, even with the evidence viewed in petitioner's favor, it does not establish that petitioner could have reasonably believed that a robbery was in progress at the time petitioner shot Burl.

Petitioner testified at trial that he was robbed by Burl while his face was to the wall. After a "minute or so", petitioner turned around and asked if he could leave. Burl then struck him with the gun and petitioner fell. Petitioner grabbed the gun, which had also fallen, rose from the ground, and ran to the doorway. When petitioner reached the door, Burl pulled him back and petitioner shot Burl in the ensuing struggle. Viewed in the light most favorable to the petitioner, the evidence does not establish that petitioner could reasonably believe that the robbery was still in progress. Even according to petitioner's version of the events, the robbery had ended well before the shooting.

## C. *Trial Preparation*

█ Petitioner also argues that counsel's lack of preparation in the case constituted a sixth amendment violation. This assertion is not borne out by the facts. While it is true that counsel told the judge at the close of the prosecution's case that he did not know what his intentions were as far as the presentation of the defense, this is immaterial because he informed the judge immediately after the recess that the petitioner's defense was self-defense. Further, counsel's cross-examination of the prosecution's witnesses was consistent with this theory of the case and counsel's behavior during trial provided petitioner with meaningful representation.

█ Counsel conducted cogent examinations and cross-examinations of witnesses. He competently led petitioner through petitioner's version of the events and buttressed petitioner's testimony by introducing in evidence articles in Burl's possession upon his death which matched the description of the articles petitioner said were stolen from him.[2] On the whole, counsel made appropriate objections. His summation properly focused on contradictions in the testimony of the prosecution's witnesses, and the fear petitioner experienced when confronted with a gun. Petitioner received meaningful representation within the meaning of the sixth amendment.

## *TRIAL COURT'S JURY CHARGES*

█ A state court jury charge is a matter of state law. Alleged errors are not reviewable on federal habeas corpus absent a showing that defendant was deprived of a federal constitutional right. *Wright v. Smith*, 569 F.2d 1188 (2d Cir.1978). When jury instructions are challenged, habeas corpus review must determine whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

█ Circuit courts have recognized that claimed errors in a trial court's failure to give a lesser included offense instruction generally are not of constitutional magnitude. *See DeBerry v. Wolff*, 513 F.2d 1336 (8th Cir.1975). The trial court did not charge the jury with respect to the unrequested lesser included offenses of reckless manslaughter and intent to cause serious physical injury and rejected a request by petitioner's counsel to charge the jury on the theory of criminally negligent homicide. There is no violation of constitutional magnitude in the present case, because, as has been discussed previously in regard to the unrequested charges, such charges were not warranted under New York law

**2.** This Court agrees with the trial court judge that counsel should not have needed a trial adjournment to obtain the articles found in Burl's possession, but should have obtained them at an earlier time. However, petitioner suffered no harm from this adjournment as all the evidence was subsequently obtained and introduced at trial.

by the facts in the case.[3] The trial court's instructions on justification did not deprive petitioner of a federal constitutional right, but were proper under the circumstances of the case. As previously discussed, under New York Law petitioner was not entitled to a justification instruction on the use of deadly force when one reasonably believes a robbery is in progress.

## DENIAL OF REQUEST TO SUBSTITUTE ATTORNEYS

Petitioner contends that the trial court's refusal to allow petitioner to substitute attorneys was a violation of the right to assistance of counsel as guaranteed by the sixth amendment. In a letter to the trial court dated July 25, 1980, eight months before the trial, petitioner alleged that counsel refused to provide him with copies of his indictment and other papers relating to his case, and that counsel refused to communicate with petitioner's wife. Petitioner's request was denied without a hearing by Justice Eggert.

In order to warrant a substitution of counsel during trial, a defendant must show good cause, such as conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict. *See United States v. Calabro*, 467 F.2d 973, 986 (2d Cir.1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). Petitioner has offered no reason why this standard should not apply to requests made before trial.

When a request for substitution of counsel is made, a trial court need only make formal inquiries into requests which are "seemingly substantial" on their face. *Calabro*, 467 F.2d at 986. Because petitioner's motion failed to raise seemingly substantial complaints, Justice Eggert properly denied petitioner's motion without a formal inquiry into its merits.

While petitioner's motion alluded to a "lack of communication" between himself and his attorney, his only concrete objections were that counsel failed to provide petitioner with requested documents and that counsel failed to communicate or meet with petitioner's wife. Petitioner did not allege that counsel failed to meet with him or that there was no contact between them, although petitioner stated that he did not know what was going on in his case. The alleged failure of petitioner's counsel to supply petitioner with a copy of his indictment and other pertinent papers does not rise to the level of cause warranting substitution of counsel. Nor does the failure of counsel to meet with petitioner's wife. *See United States v. Morrissey*, 461 F.2d 666 (2d Cir.1972) (allegations, among others, that counsel failed to meet with defendant during the five months before trial raised grounds sufficiently serious to warrant an inquiry by the judge).

## DENIAL OF DAILY COPY OF TRANSCRIPT

Petitioner contends that the trial court's refusal to supply petitioner with a daily copy of trial minutes amounted to a denial of equal protection under the fourteenth amendment. This claim must fail. The Second Circuit has held that the right of an indigent defendant to a daily transcript is not guaranteed by the Constitution. *United States v. Sliker*, 751 F.2d 477, 491 (2d Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985). A state need not provide an indigent defendant with all the benefits enjoyed by a wealthy one. *Id.* at 491.

The decision whether to supply an indigent defendant with free daily trial transcripts is one that rests within the sound discretion of the trial judge. *United States v. Rucker*, 586 F.2d 899 (2d Cir. 1978). In the case at bar, petitioner suf-

---

**3.** Nor was a charge of criminally negligent homicide supported by the facts in this case. There is no evidence supporting a theory that petitioner failed to perceive the risk of death in firing a gun four times at close range. Petitioner's testimony that he thought the gun was a toy gun related only to his impression after Burl was shot because of the lack of blood. Petitioner thought the gun was real at the time of the shooting, as he testified to his extreme fear at the sight of the gun.

fered no actual harm from being denied daily trial transcripts. The judge denied the request because there was a shortage of available court reporters and the judge noted that the trial would be a relatively simple one. Further, the court allowed the court reporter to read back portions of testimony requested by petitioner's counsel at the close of the presentation of witnesses.

### KNOWING PRESENTATION OF FALSE EVIDENCE

Petitioner alleges that, in violation of the fourteenth amendment the prosecution knowingly submitted false evidence through the pretrial and trial testimony of Detective Carl Braunagel. Braunagel's testimony consisted of assertions that petitioner did not request an attorney before waiving his constitutional rights and allowing Braunagel's questioning.

Petitioner first raised this issue in a motion brought to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. The Supreme Court of the State of New York explicitly denied the motion because the issues raised were known to petitioner both at the time of trial and at the time of appeal and could have been raised by petitioner at either time. Consequently, petitioner was procedurally barred from a state remedy by failing to raise his objection in a timely fashion in state court. *Jones v. Henderson*, 580 F.Supp. 273 (E.D. N.Y.1984).

 Because state court review of petitioner's claim was barred by procedural default, petitioner may not raise the same issue in federal court absent a showing of cause and prejudice. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A claim that the default occurred through actions of counsel does not constitute "cause" unless counsel's failure to raise the issue is so egregious as to amount to a sixth amendment violation. *See Indiviglio v. United States*, 612 F.2d 624 (2d Cir. 1979), *cert. denied*, 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980). In order to challenge Braunagel's testimony, counsel would have been required to have petitioner testify at the pre-trial hearing, giving the prosecution an opportunity to collect statements for impeachment purposes at trial. Counsel's actions therefore reflected sound trial strategy. Nor is petitioner prejudiced by the default. Braunagel's statements had no direct bearing on petitioner's guilt. While they established that petitioner had answered questions about his familiarity with the Bronx and with Burl in a manner inconsistent with his trial testimony, the statements did not bear a sufficient likelihood of affecting the outcome of the trial to prejudice the petitioner.

### CONCLUSION

For the reasons set forth above, petitioner's petition for a writ of habeas corpus is denied.

SO ORDERED.