Matthew MASSIMO, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 71 Civ. 1868.

United States District Court,
S. D. New York.

Feb. 10, 1972.

Walter L. Stratton, Donovan, Leisure, Newton & Irvine, New York City, for petitioner; Paul A. Crotty, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., by Jay S. Horowitz, New York, N. Y., for respondent.

MOTLEY, District Judge.

*Findings of Fact, Conclusions of Law, and Order on Petition Pursuant to 28 U.S.C. § 2255*

Petitioner Matthew Massimo was convicted by this court on twenty-three counts of using the mails to defraud, and on one count of conspiring to do the same (18 U.S.C. §§ 1341, 1342, and 371) on March 4, 1969 after trial to the court without a jury. United States v. Catanzaro, Massimo, and Morfield, 68 Cr. 9 (S.D.N.Y. March 4, 1969) (Motley, J.) Massimo was found to have obtained credit cards fraudulently, and then used the cards to make purchases in various retail stores. He is presently serving five-year prison terms imposed on each count, to run concurrently. Massimo took a direct appeal from his conviction, the judgment below being affirmed, Judge Friendly dissenting, United States v. Massimo, 432 F.2d 324 (2d Cir. 1970). A petition for writ of certiorari was denied, 400 U.S. 1022, 91 S.Ct. 586, 27 L. Ed.2d 633 (1971).

Sentence having been imposed by this court, Massimo now moves here to vacate and set aside the sentence pursuant to 28 U.S.C. § 2255.[1] His claim is that he was denied his rights under the Fifth and Sixth Amendments to the United States Constitution: 1) by the fact that agents of the government questioned him while he was in custody at a time when he was not represented by counsel, and then used a statement obtained from him under those circumstances against him at trial; and 2) by the failure of his court-appointed counsel to obtain a ruling by the court on the admissibility of the statement, this being alleged to constitute ineffective assistance of counsel.

The crux of this case is the statement made by Massimo on December 26, 1967 to a U. S. Postal Inspector, which was introduced by the government by stipulation at trial. That stipulation was to the effect that Postal Inspector Gerard A. Mailloux, if called to the stand, would testify that Massimo had confessed to certain enumerated facts constituting the elements of the crimes charged. (See Stipulation dated 1/20/69, pp. 4–5). The government's case in chief consisted of a number of stipulations and twenty-two exhibits; there were no witnesses. Massimo's defense was that he was insane at the time of the commission of the acts charged.[2]

Massimo raised the issue of the inadmissibility of his statement to the Postal Inspector on his direct appeal, but the majority found the record insufficient to establish his claim. 432 F.2d at 326. They nevertheless addressed Massimo's contentions as follows:

"Appellant's arguments directed at the claimed inadequacy of counsel appear to raise serious questions. Interrogation of an accused in the ab-

---

1. 28 U.S.C. § 2255 provides, in pertinent part:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds . . . that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial . . . as may appear appropriate. . . . ''

2. The government introduced one witness on rebuttal—a psychiatrist—to counter Massimo's insanity defense.

sence of counsel after arraignment is, of course, suspect. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *We do not find in the record before us sufficient support for these claims, however.* The most that can be said is that there is a possibility that counsel erred, perhaps seriously, in not pressing formal objections to the admission of Massimo's statements, and in agreeing to the stipulation which placed them before the court. The record suggests, however, another possible alternative, that this course of action was the result of a considered trial strategy by Massimo and his counsel. Massimo had a history of voluntary admissions to mental institutions and a tale of excessive intake of Doriden. Massimo also laid claim to a history of obsessive desire to damage credit card companies, particularly Uni-Serve, which had allegedly harmed him in the past.

In the face of a strong government case Massimo may well have determined early in the proceedings that his best hope lay in admission of the underlying facts and reliance on a defense of lack of mental responsibility. The government informed us at oral argument that Massimo had executed a written waiver of rights at the December 26 interview, which is not in the record before us and was not produced at trial because the question was not then raised. In these circumstances we cannot say that counsel's actions were such as to shock the conscience of the court.

It may well be that the decision to waive constitutional protections and make the statements was part of a strategic plan based on a realization that an insanity defense was the only hope for acquittal and that admission of the credit card acquisition and use was necessary to the defense. If so, the stipulation may not be any indication at all of incompetence of trial counsel. It does not require reversal here.

\*    \*    \*    \*    \*    \*

If there was any infirmity in the waiver of December 26, or in the decision to agree to the stipulation, not apparent on the record here, the facts may be developed in the district court on collateral attack."

432 F.2d at 325–326 n. 1.

This court held a hearing on the § 2255 petition on July 2, 1971 in order to further develop the facts. The Postal Inspector, Mailloux, Massimo's trial counsel, Joseph I. Stone, and petitioner himself were called as witnesses. Based on the testimony adduced at the hearing, and the various moving papers and transcripts in United States v. Catanzaro, Massimo, and Morfield, *supra*, we deny Massimo's § 2255 petition to vacate and set aside his sentence and make the following findings of fact and conclusions of law.

## I. *The Events Leading Up To Massimo's Trial*

Massimo was arrested pursuant to a warrant on December 22, 1967. He was arraigned on that day before Commissioner Bishopp, and his preliminary hearing was adjourned until December 27th. Bail was set at $10,000. Massimo, being unable to make bail, was remanded. On December 27th the preliminary hearing was further adjourned until January 3, 1968, and then until January 10th. On January 9th an indictment was filed; as a consequence, no preliminary hearing was ever held. Massimo remained in custody until January 12th when a successful application was made by his court-appointed counsel to reduce his bail.

It was not until January 12, 1968, after Massimo's first appearance before a district court judge on January 10th, that counsel Joseph Stone was appointed to represent Massimo. Massimo had been unrepresented prior to that time.

A notice of motion dated January 31st, supported by an affidavit by Massimo

signed on January 25th, was filed by Stone on behalf of Massimo on February 2, 1968. No supporting memorandum of law was submitted.

A significant inconsistency between the relief requested in Stone's notice of motion, and that requested in Massimo's affidavit appended to the notice of motion, is the source of the difficulty in this case. The notice of motion sought the disclosure of certain enumerated particulars, the discovery of the report of any psychiatric examination of Massimo the government may have required, the discovery of Massimo's statements to "agents of the United States Post Office and specifically the United States Attorneys," and the return of all items taken from Massimo at the time of arrest without a search warrant "that are evidentiary in nature." It also requests that a psychiatric report be prepared on Massimo. Conspicuously absent from Stone's notice of motion is any request for suppression of Massimo's statements made to agents of the government.[3]

By contrast, Massimo's affidavit states at pp. 1–3 that:

". . . [T]his affidavit is made in support of my motion for a bill of particulars pursuant to the Federal Rules of Criminal Procedure and for discovery and inspection and for the suppression of statements taken from me at the time of my arrest and all other evidentiary material seized in conflict with my Constitutional Rights under the Fourth Amendment of the United States Constitution . . . *[T]hese items* [driver's registration cards and licenses allegedly taken from Massimo's wallet at the time of his arrest], *along with any other written statements taken from me, . . . should be suppressed. . . .* I have no recollection at this time as to what was said to me but . . . I made certain statements *and several days later while incarcerated and without benefit of counsel, the Post Office inspectors visited me and asked me to sign certain statements. . . . [T]hese statements were taken from me contrary to the Supreme Court ruling in United States v. Miranda (sic) . . . I should be afforded a hearing as to the voluntariness of these statements and the United States Attorney should be precluded from. using these statements in evidence. . . . [I]t is respectfully requested . . . that my statements be suppressed as being not taken within the purview of Miranda v. United States (sic) . . . .*" (Emphasis added)

It is apparent that the government was aware that some additional requests had been made in Massimo's affidavit that were not contained in Stone's notice of motion, since the government discussed some of these items in its affidavit in opposition and supporting memorandum.[4] However, the government papers contain no acknowledgement of that portion of Massimo's affidavit dealing with the suppression of the statement made to the Postal Inspector on December 26, 1967.[5]

A suppression hearing held by Judge Weinfeld on Massimo's motion on April 1st considered only the admissibility of

---

3. Some degree of imagination is required to construe the notice of motion as even requesting suppression of tangible evidence since it merely states at page 2:

"GRANTING pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, all items taken from the defendant MATTHEW MASSIMO at the time of his arrest without benefit of a warrant that are evidentiary in nature; . . ."

4. See, e. g., government's affidavit in opposition to Stone's notice of motion at p. 7: "Although the notice of motion does not seek a *severance*, the affidavit of de-fendant Massimo requests that his case be severed from that of the codefendants." (Emphasis added)

5. Though the government considered Massimo's affidavit as well as the notice of motion in connection with Massimo's motion *to* suppress tangible evidence, see government's affidavit in opposition at p. 4 and government memorandum at p. 2, it completely side-stepped the issue of suppression of Massimo's *statements* which was raised in that very same affidavit. See also 1/20/69 Trial Tr. dhjb at 15.

*tangible evidence* seized from Massimo at the time of his arrest. No hearing was ever held on the admissibility of any of Massimo's statements.

## II. *The Strategy Of Defense Counsel*

The majority in the Court of Appeals has suggested that defense counsel may have been contemplating an insanity defense at the time he made his pretrial motions. If so, it would be entirely understandable for him not to have moved to suppress statements obtained from Massimo in violation of Massimo's Fifth and Sixth Amendment rights since, even if these statements corroborated significant facts underlying the charges in the indictment, they would in no way impair an insanity defense, which is an affirmative defense that admits the facts of the crime.

However, Massimo's affidavit, undoubtedly prepared by Stone, did raise the Fifth and Sixth Amendment questions with regard to Massimo's statement to Inspector Mailloux. Moreover, Stone seems to have been under the impression that a hearing had been conducted by Judge Weinfeld on the motion to suppress the statement, and that the motion had been denied. This becomes apparent in Stone's comments at trial at the time of the introduction into evidence of the stipulation containing Massimo's statement to Mailloux:

Assistant U. S. Attorney Kulleseid:

Finally, the last two pages of the stipulation are concerned with what the Postal Inspector would testify with regard to a statement which was made by this defendant to him. And it is somewhat in corroboration, I think, of the stipulated facts on pages 1 through 3.

In other words, the testimony by the Postal Inspector would have been that he interviewed the defendant and that the defendant in essence admitted that he had filed these applications, received the credit cards and that he and Catanzaro, with the assistance of Mor-field, went around and charged various purchases to them.

On the basis of that stipulation, that has been entered into, the government would then rest and, as I understand it, Mr. Stone is then ready to put the defendant on to testify with regard to that.

Mr. Stone:

Your Honor, as far as the last stipulation is concerned, it is stipulated if Inspector Mailloux was called, he would certainly testify to this *and there was a prettrial hearing which ruled against the defendant. So the stipulation is acceptable except the defendant certainly has never conceded the truth of these matters although the ruling has been against him; and to preserve the record the defendant would like to make that clear.*

Mr. Kulleseid:

The stipulation certainly says that the inspector would testify in this regard.

The Court:

Wait a minute. I didn't understand what the prior hearing consisted of.

Mr. Stone:

*There was a motion to suppress the statements and certain items seized at the time of his arrest and the defendant would like me to renew that objection at this time although the ruling was against him at the pretrial hearing.*

The Court:

Do you have a copy of the decision?

Mr. Stone:

It's the same pretrial hearing that Morfield was present at, your Honor. It was conducted together by Judge Weinfeld.

[Emphasis added]

(Trial Tr. dhjb 9–11)

The fact is, as evidenced by the papers filed in United States v. Catanzaro, Massimo, and Morfield, *supra*, and the transcripts in that case, that the admissibility of the statement made to Mailloux

was never ruled on, and the Second Circuit so found. 432 F.2d at 326. This was a consequence of Stone's failure to adequately raise the issue.

At the hearing conducted on Massimo's instant petition on July 2, 1971 Stone testified that there had never been a ruling on the admissibility of Massimo's statement to Mailloux, and that he had never been under the false impression that there had been such a ruling. He explained his statement at trial quoted above by saying that he must have been confused at the time. (7/2/71 Hearing, Tr. mw at 99–100, 117–18, 120–27). This court finds that Stone was indeed confused at that point in the trial, and that his confusion stemmed from a mistaken belief that he had moved to suppress the statement to Mailloux, and that Judge Weinfeld had denied the motion. It was as a consequence of this misapprehension that he stated at trial that he wished to preserve his objection to the admissibility of the statement for appeal.

III. *The Admissibility Of The Statement And The Effect Of Inadmissibility On The Verdict In The Case*

■ Before we can determine whether Massimo's Fifth and Sixth Amendment rights were violated by the failure of Stone to object to the admission of Massimo's statement to Mailloux, and by Stone's agreement to stipulate to the facts of the statement, we must consider whether a motion to suppress, if made, would have been meritorious. The admissibility of the statement under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is determined by the circumstances surrounding the giving of the statement. At the time of Massimo's arrest on December 22, 1967 Massimo refused to answer the questions of the arresting officers, even going so far as to deny that he was Matthew Massimo. He persisted in his unwillingness to make any statement until after he talked to his brother at the Federal Detention Center on December 26th. Following that conversation he agreed to speak to Mailloux.

The next day, before he began to question him, Mailloux showed Massimo the same postal department *Miranda* waiver form that he had shown Massimo at the time of his arrest, and which Massimo had refused to sign then. This time Massimo signed the form, which read as follows:

"Before you are asked any questions you must understand your rights.

(a) You have the right to remain silent.

(b) Anything you say can be used against you in court.

(c) You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

(d) You have the same right to the advice and presence of a lawyer even if you cannot afford to hire one. *We have no way of furnishing you a lawyer but one will be appointed for you, if you wish, if and when you go to court.*

(e) If you decide to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." (Emphasis added)

Massimo next proceeded to make the statement in issue here, which Mailloux subsequently recited to the Assistant United States Attorney who made notes on it.

The question that arises is whether Massimo effectively waived his Fifth and Sixth Amendment rights in connection with his statement when he signed the post office form. Under recent case law in this Circuit it would appear that Mas-

simo's statement was taken in violation of *Miranda,* and that the form was inadequate to waive his Fifth and Sixth Amendment rights.

United States v. Fox, 403 F.2d 97 (2d Cir. 1968), concerned a defendant who was not warned by arresting agents that he had a right to appointed counsel if he were indigent, and was told that he could consult with an attorney "prior to any question." The Court interpreted the warning as implying that defendant could not have counsel present *during* questioning, and held that this misleading warning, coupled with the failure to warn of the right to appointed counsel, was inadequate to waive defendant's Fifth and Sixth Amendment rights as to the confession obtained from him in the face of these statements.[6]

The holding in *Fox* is highly relevant to the situation here. The statement signed by Massimo informed him as to his right to appointed counsel, that his right would only arise *after* he was questioned by Mailloux, that is, *"if and when* [he went] to court." This is even more prejudicial to a defendant than being told that he has the right to consult with counsel before, but not during, questioning.

In United States v. Lamia, 429 F.2d 373 (2d Cir. 1970), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970), the defendant was warned orally of his rights, and later signed an F.B.I. waiver form which included statements to the effect that he had a right to appointed counsel if he were indigent, and a right to have counsel present during any questioning.[7] In distinguishing the warnings in *Lamia* from those in *Fox,* the court reiterated the latter holding:

"... [S]ignificantly, Fox was *not* told that he could have counsel appointed for him if he could not afford one. This omission tainted the entire warning and the effect it must have had on Fox. Furthermore the majority in that case, including a member of this panel, considered the warning that Fox 'could consult an attorney prior to any question' to be affirmatively misleading since it was thought to imply that the attorney could not be present *during* the questioning. Whether this was correct or not, we think that Fox must be considered to rest on these two bases. ... Here Lamia was apprised that an attorney would be appointed if he was unable to afford one, and was told nothing that would suggest any restriction on the attorney's functioning." (Emphasis added) 429 F.2d at 377.

United States v. Chaplin, 435 F.2d 320 (2d Cir. 1970) dealt with a defendant who was given an inadequate warning as to his rights by the prosecutor prior to making an inculpatory statement: although he was told that he had a right to remain silent, and to have a lawyer present, he was not told that counsel

---

6. There was held to be one additional deficiency in the warning that is not relevant to the decision in the instant case. See 403 F.2d at 100.

7. There were two oral warnings: first, that he had a "right to remain silent and and that anything he did say would be used against him at a later date", 429 F. 2d at 374, and, shortly thereafter, that: "he need not make any statement to us at that time, that any statement he would make could be used against him in court; he had a right to an attorney, if he wasn't able to afford an attorney, an attorney would be appointed by the court." 429 F. 2d at 374–375.

The F.B.I. form read, in pertinent part, as follows:

"Your Rights"

"Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." 429 F.2d at 375, n. 1.

would be appointed for him if he were indigent. 435 F.2d at 322.

It should be noted that *Chaplin* and *Fox*, as distinguished from *Lamia* and the present case, were cases where warnings were given at a time prior to the *Miranda* decision, but where the trial was held after *Miranda* had been decided. *Miranda* standards nevertheless apply to these cases. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). However, *Chaplin* sets forth a special rule for this limited category of decisions:

> . . . [W]here *Miranda* is applied to pre-*Miranda* statements, this court will make an ex post facto inquiry into financial ability to determine whether a defendant, who has not been fully warned of an indigent's right to assigned counsel, has suffered prejudice. 435 F.2d at 322.

Upon making that inquiry the court held that the inadequacy of Chaplin's warning was made harmless by the fact that he was not indigent, as indicated by his receipt of a reasonable, steady income, his possession of a substantial amount of cash, and his retention of his own counsel at trial.

Even if we were to apply this less stringent *Miranda* requirement to the instant case, the warnings would be inadequate. Here Massimo at no point in the progress of his case has been able to afford his own counsel: he had court-appointed counsel from his first appearance before a judge until now. The government has made no allegation that he is not, in fact, indigent. Therefore we must conclude that he was prejudiced by not being informed that he had a right to appointed counsel at every critical stage of the proceedings, including interrogations. See Hamilton v. Alabama, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

The post office form was signed by Massimo at a time when *Miranda* had already been decided, when the Supreme Court had made it abundantly clear that the right of an indigent defendant to appointed counsel was the same as that of a defendant able to afford counsel, and that this right extended to every critical stage of the proceeding. His signing a form which stated that counsel would be supplied for the signer only "if and when [he went] to court" would necessarily be inadequate to waive his Fifth Amendment rights. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The court finds that Massimo's statement should have been suppressed.

### IV. *Ineffective Assistance Of Counsel*

■ We have now reached the question whether Massimo has made the required showing that the failure of Stone to request a ruling on the admissibility of Massimo's statement resulted in legal representation that was "so woefully inadequate 'as to shock the conscience of the Court and make the proceedings a farce and mockery of justice.'" United States v. Currier, 405 F.2d 1039, 1043 (2d Cir. 1969), citing United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). This is the measure of ineffective assistance of counsel in this Circuit. United States v. Garguilo, 324 F.2d 795, 796 (2d Cir. 1963); United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2d Cir. 1967).

■ The determination of ineffective assistance of counsel is a two-step process. Once the defendant has made a prima facie showing that the assistance of counsel has been inadequate, we must consider whether there was sufficient prejudice to the defendant, under all the circumstances of the trial, as to make the proceedings a "farce and mockery of justice."

It is Massimo's contention that he did not intelligently waive his constitutional rights: that Stone erroneously advised him that a suppression hearing had been held before Judge Weinfeld as to the statement in issue, and that it had been found to be admissible; that Massimo therefore agreed to the stipulation which

in effect admitted the crime, and then mounted the defense of insanity.[8]

■ We agree that Massimo has made a prima facie showing. We find that Stone's actions in first raising the issue of suppression of statements only in Massimo's affidavit and not in the notice of motion, in failing to press for a hearing and determination on the admissibility of the statement to Mailloux, in subsequently leading the trial court to believe that a motion to suppress the statement had been denied, and in then stipulating to the facts of the statement, constitutes inadequate representation. These were not "tactical errors or mistakes in strategy" United States v. Garguilo, *supra*, 324 F.2d at 797, resulting as they did either from a lapse of memory by counsel on an issue critical to his client's case, or obvious lack of preparation at the hearing on the motion and later at the trial. Such behavior comes close to shocking the conscience of the Court. However, in the context of the trial we find that counsel's behavior was harmless.

### V. The Error Is Harmless Beyond A Reasonable Doubt

Although Massimo has demonstrated that Stone carried out his duties as trial counsel in a highly negligent manner we find that the admission into evidence of Massimo's statement, that resulted from defense counsel's negligence, was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Had Massimo's attorney properly made application to the court to suppress the statement, and had it been suppressed, as we feel it should have been, Massimo might not have chosen to admit the facts underlying the charges in the indictment by a stipulation. Also, he might not have raised an affirmative defense, which ad-

mitted the acts charged, had he thought that the government would be prohibited from introducing his own statement to Mailloux at trial to prove these facts. See Harrison v. United States, 392 U.S. 219, 224, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

Nevertheless, even if Massimo had not pleaded insanity and no mention were made of the statement to Mailloux, the evidence against Massimo would have been overwhelming. See Harrington v. California, *supra*, 395 U.S. at 254–255, 89 S.Ct. 1726; United States ex rel. Rosenberg v. Mancusi, 445 F.2d 613, 618–619 (2d Cir. 1971).

Massimo was alleged to have applied for credit cards in the name of "Matthew Ford." It was alleged that when he received the cards, he and co-defendant Gus Catanzaro made many credit card purchases. Co-defendant Morfield was said to have transported the other defendants to and from retail stores in his car, and to have received some of the goods purchased on the credit cards by Massimo and Catanzaro. A handwriting expert had identified the handwriting on the fraudulent credit card applications, and on the charge slips for much of the merchandise, all of which were in the government's possession, as Massimo's handwriting. (See Stipulation dated 1/20/69 and government trial exhibits). Both of Massimo's co-defendants pleaded guilty, and were thus available as witnesses for the government. Witnesses from the credit card issuer were ready to testify as to the mailing of the credit cards to Matthew Ford and the receipt by mail of the charge slips from the store owners.

Given these facts, the court finds that the introduction into evidence of Massimo's statement to Mailloux was harmless beyond a reasonable doubt. The petition to vacate and set aside Massimo's sentence is accordingly denied.

So ordered.

8. Mr. Stone testified on the hearing on Massimo's petition that he told Massimo about the statement (without saying precisely what he told Massimo) but then agreed to stipulate to the facts admitted in the statement in connection with an insanity defense.)