UNITED STATES of America ex rel. Louis TESTAMARK, Petitioner,

v.

Leon J. VINCENT, Superintendent, Green Haven Correctional Facility, Stormville, New York, Respondent.

No. 73 Civ. 1133 (CHT).

United States District Court, S. D. New York.

Sept. 26, 1973.

On Motion for Stay Nov. 2, 1973.

Correctional Facility, Stormville, New York, pursuant to a judgment of conviction rendered in Supreme Court, New York County. A jury found Testamark guilty of the crimes of robbery in the first degree, petit larceny, possession of a weapon as a felony and attempted assault in the second degree. The trial judge sentenced him to indeterminate terms of imprisonment of up to ten years on the robbery count, up to seven years on the possession count and up to four years on the attempted assault count. Petitioner received an unconditional discharge on the petit larceny count. Testamark now petitions the Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (1970), on the grounds that he was denied his right to counsel under the Sixth Amendment to the United States Constitution and that he was denied his right to a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution.

A brief summary of the facts which formed the basis of his conviction are as follows. On December 24, 1969, petitioner entered a liquor store on Ninth Avenue in New York City. At that time, the owner, an employee and approximately ten customers were present in the store. As the owner was in the process of making change for one of the customers, petitioner pulled out a gun and demanded the contents of the open cash register. While petitioner was reaching into the register to remove the money, the owner grabbed petitioner's gun hand and pushed it toward the ceiling. A shot rang out and the owner reached for his own gun (for which he possessed a license) and shot petitioner in the stomach. Petitioner, although wounded, pushed the owner to the floor and attempted to flee.

Before leaving the store, however, petitioner turned and fired another shot at the owner. An employee then struck petitioner over the head with a bottle. Testamark crashed through the plate glass door out into the street and ran down Ninth Avenue. The owner, after returning petitioner's fire, pursued him.

L. Mifflin Hayes, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., New York City, Stanley L. Kantor, New York City, of counsel, for respondent.

## MEMORANDUM

TENNEY, District Judge.

Petitioner, Louis Testamark, is presently incarcerated in Green Haven

After a short chase, petitioner surrendered to the owner when his wounds permitted him to flee no further. The police were then called. Upon their arrival, they arrested petitioner and recovered the gun which he allegedly used in the robbery.

Testamark was taken to Saint Vincent's Hospital, where he remained until March 16, 1970. On that date he was arraigned in Criminal Court, New York County and the Legal Aid Society was appointed to represent him. On May 14, 1970, the Grand Jury indicted petitioner for the crimes of which he now stands convicted. On May 26, 1970, petitioner was arraigned in Supreme Court, New York County, on the charges contained in the indictment.

Between the date of his second arraignment and the date of his trial, petitioner's case appeared on the calendar of the Supreme Court no less than nineteen times. Ten different Legal Aid attorneys represented him. No one of them appeared more than two times. On no less than five occasions, the court record indicates either no appearance for petitioner or does not name his counsel.

By June 22, 1970, when petitioner had appeared before the court for the third time, he had been in custody for six months and had been visited by his trial attorney just once for the purpose of taking a statement. One June 22, petitioner requested a copy of the indictment and that "Appellate Division" counsel be appointed (pursuant to N.Y. County Law Art. 18B McKinney's Consol.Laws, c. 11 (McKinney 1972)) to replace Legal Aid. The motion was denied without any inquiry into the reasons for the application. (PTT no. 3 at 2.) [1]

Approximately one month later, on July 28, 1970, petitioner wrote to his trial counsel, asking that she come to see him. She neither replied to the letter nor visited Testamark. On October 6, 1970, approximately ten months after petitioner's arrest, he again appeared before the same judge who presided on June 22, 1970, and again requested a copy of the indictment and appointment of new counsel. Despite the desperate tone of his plea, the motion was denied without any inquiry into the substance of the application. (PTT no. 5 at 10–12.)

At the same hearing, petitioner's case was marked ready for trial with the consent of his attorney. Subsequently, she was injured and Edward Lipton was assigned in her place. From October 27, 1970 to December 17, 1970, the case was marked "ready and passed" twelve times on the trial calendar. On December 17, petitioner was produced in court. The assistant district attorney, Mr. Kiernan, informed the presiding judge that the prosecution was ready for trial and that Mr. Lipton, too, was ready to proceed (although Mr. Lipton was not then present). This was the first time that Testamark had any knowledge that Mr. Lipton now represented him (however, it is stipulated that Mr. Lipton was assigned to the case on or about October 20, 1970). Petitioner again moved for the appointment of new counsel. Although the judge initially granted the request, he reversed himself when Mr. Kiernan persuaded him that Mr. Lipton was indeed ready for trial and that petitioner was merely seeking to delay the trial. The judge did, however, order Mr. Lipton (who was not present) to speak with petitioner (PTT no. 19 at 4–10).

This order was disregarded and Mr. Lipton did not see petitioner until January 4, 1971, the day of the trial. After a short conference with petitioner, Mr. Lipton attempted to bargain for a plea to a reduced charge but was unsuccessful. When the case was called for trial, Mr. Lipton, at petitioner's request, moved that Legal Aid be excused and that new counsel be appointed. The motion was summarily denied without any inquiry into petitioner's claim that Legal Aid was not prepared for trial. Although Testamark refused to accept Mr.

---

1. "PTT no. ——" refers to the appropriate pre-trial transcript number.

Lipton as counsel, the Court did not relieve Legal Aid of its obligation to petitioner.

Both a suppression hearing and a trial were held. Petitioner repeatedly refused to participate in either. Mr. Lipton, who sat by petitioner's side throughout the proceedings, made no statements of any kind to the jury (although he did participate in discussions at the sidebar), did not question any witnesses, and did not present any witnesses on petitioner's behalf.

Not surprisingly, petitioner was convicted. An appeal was taken to the Appellate Division which affirmed the conviction. People v. Testamark, 40 A.D.2d 645, 336 N.Y.S.2d 482 (1972). An application for leave to appeal to the New York Court of Appeals was denied. Petitioner has, therefore, exhausted his state remedies.

## RIGHT TO EFFECTIVE REPRESENTATION

■ The first question facing this Court is whether petitioner was denied his right to counsel under the Sixth Amendment to the United States Constitution. It is well settled that the right to counsel means the right to effective counsel. See, e. g., McMann v. Richardson, 397 U.S. 759, 773, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ Petitioner's first assertion, which is uncontradicted by respondent, is that from March 16, 1970, when Legal Aid was first assigned to represent petitioner, to January 4, 1971, the start of his trial, he was visited only once by someone from Legal Aid. Respondent replies to this assertion by citing to Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), in which the Supreme Court held that there was no deprivation of the right to effective assistance of counsel where the sole consultation between defendant and

his assigned counsel occurred just a few minutes before trial.

*Chambers* is not, however, dispositive of the instant application. First, the Supreme Court was presented with distinguishing factual circumstances: (1) *Chambers* was a multiple defendant case and, therefore, counsel for the other defendants presumably could have compensated, through effective cross-examination, for at least some of Chambers' counsel's deficiencies; (2) Chambers' attorney had the opportunity to refer to the record of the first trial in preparation for the retrial; and (3) the claim of ineffective counsel rested primarily on the failure of Chambers' attorney to have several items of evidence suppressed—evidence which the Supreme Court found either to be admissible or even if improperly admitted into evidence to be, nonetheless, harmless error. Secondly, the court merely ruled that tardy appointment of counsel would not require a *per se* reversal of the conviction. Chambers v. Maroney, *supra,* 399 U.S. at 54, 90 S.Ct. 1975. It did not hold that all habeas corpus applications which asserted a failure of assigned counsel to confer with a petitioner more than once did not have any merit.

Furthermore, petitioner's claim does not rely solely on the grounds of an insufficient number of consultations. Petitioner asserts, and respondent concedes, that Legal Aid did nothing to prepare for trial other than his attorney's single visit to petitioner[2] and a visit to the scene of the crime by Mr. Lipton (who spoke to no one during this visit); that prior to trial, Legal Aid did not interview any witnesses, did not attempt to develop any line of defense, did not speak with petitioner with respect to any possible line of defense, did not speak with any hospital officials concerning petitioner's condition at the time of arrest and did not even seek a bill of particulars from the prosecution.

---

2. The Court notes that this visit occurred prior to petitioner's indictment in New York Supreme Court. It is questionable, there-

fore, that this visit could have materially aided in the preparation of petitioner's defense.

Mr. Lipton did, however, discuss with petitioner the possibility of pleading guilty and did attempt to bargain with the prosecution for a favorable disposition, although unsuccessfully.

Such a paucity of preparation flies in the face of established constitutional requisites.

"Counsel [for an indigent] must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. An omission or failure to abide by these requirements constitutes a denial of effective representation of counsel unless the state, on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby." Coles v. Peyton, 389 F.2d 224, 226 (4th Cir.), cert. denied, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). *See also* Hollingshead v. Wainright, 423 F.2d 1059, 1060 (5th Cir. 1970); Williams v. Beto, 354 F.2d 698, 705 (5th Cir. 1965). Indeed, Mr. Lipton acknowledges that this was one of the worst prepared cases he has seen and that the services rendered to petitioner bordered on the incompetent. (Statement of Facts ¶ 25.)

■ Respondent attempts to counter by claiming that the trial record "is replete with evidence that Legal Aid was stymied with petitioner's refusal to proceed without an 'Appellate Division' lawyer." (Respondent's Aff. in Opp. at 9.) The Court most emphatically disagrees with this conclusion. In the first instance, although the record of the suppression hearing and the trial itself is admittedly replete with petitioner's refusal to allow Mr. Lipton to serve as his counsel—*see, e. g.,* Tr. at 12–14, 15a, 21,

25–28, 33–34, 39, 50–51 [3]—such refusal neither excuses nor justifies Legal Aid's failure to prepare in advance of trial. Secondly, the record does not indicate that petitioner, prior to trial, "stymied" Legal Aid's efforts to prepare a defense. To the contrary, the record reflects the continuing and unsuccessful efforts of petitioner to draw the trial court's attention to the utter failure of his counsel to prepare for trial. A few examples from the pre-trial proceedings follow.

"THE DEFENDANT: May I have a copy of the indictment? I have asked for it two or three times already.

"THE COURT: You do that through your counsel.

"MR. KAPLAN [appearing for Legal Aid on behalf of petitioner]: I will notify Mr. Harap.

"THE DEFENDANT: I would also like an Appellate Division lawyer assigned to this case.

"THE COURT: Motion denied.

"THE DEFENDANT: Why can't I have an Appellate Division lawyer assigned to the case?

"THE COURT: Because you have a lawyer assigned who is very capable, Mr. Harap. I happen to know Mr. Harap and he is a very capable young man and much more capable than some of the Appellate Division lawyers that you people are clamoring for." (PTT no. 3 at 1–2.)

Contrary to the statement made by Mr. Kaplan, Mr. Harap had not been, nor ever was, assigned to represent petitioner.

"THE DEFENDANT: I furthermore request that I have a copy be issued of the indictment, the valid indictment, because I may have it.

"THE COURT: [Counsel], will you see he gets a copy of the indictment?

"[COUNSEL]: I will make one.

"THE DEFENDANT: I want a copy of it today.

---

**3.** "Tr." refers to the trial transcript.

"[COUNSEL]: You can't have a copy of it today.

He is going to relieve us and going to represent himself. Otherwise, his attorney will have none, because I have only one copy.

"THE DEFENDANT: My legal defense is walking away from me, denying a copy of the indictment.

"THE COURT: She is not walking away.

"THE DEFENDANT: What is she doing? She says I can't have a charge that is being presented before me.

"THE COURT: Her office has to have a copy of the indictment in order to properly represent you.

\* \* \* \* \* \*

"THE DEFENDANT: (interrupting) I was stalled the last time I was here. [She] was my attorney from the beginning, and she only came here—and this is the reason why every time I come to court there is somebody different I see here. That is what I am trying to point out. Every time I come to court I see somebody different. Nobody knows what is going on.

"THE COURT: The case is being put down for October 20th . . . for trial or disposition. That's all I can do.

"THE DEFENDANT: Your Honor, I also would like that this request be granted; that I have a lawyer from the Appellate Division assigned to try this case.

"THE COURT: I can't do that.

"THE DEFENDANT: Why can't you, your Honor?

"THE COURT: Because.

"THE DEFENDANT: Because why? From the circumstances you said the last time that you felt the Legal Aid Society was—I haven't seen this legal aid here in over—since the case has been. They have never seen her in court, your Honor. Every time I appeared in court, there has always been someone else here. And when I come to court, all they do is adjourn it. This is

what I'm saying. What is the excuse for the neglect? And I have been here for ten months now, and things are getting worse, and nobody seems to understand anything, nobody wants to understand anything.

\* \* \* \* \* \*

"THE COURT: And you may be able to dispose of the matter, but we wouldn't be able to do it today. I have got to put this down for October 20th.

"THE CLERK: October 20th. Remand the defendant." (PTT no. 5 at 10–12.)

"MR. KIERNAN [assistant district attorney]: May I say, for the record, that the People have been ready for the last six months for trial in this case.

I believe Mr. Lipton of Legal Aid represents this defendant, and he is ready for trial. This Part has been on trial for the last four weeks with a case.

The first day of the new term is January the 4th, and on that date I assume that Legal Aid will still continue to be ready.

"THE DEFENDANT: Excuse me. This man that he's referring to, there's nobody that has come down to this institution here to talk to me, or even to find out what kind of conditions the case is in, or bail, for the whole stage of my incarceration.

(Whereupon, Mr. R. Peck, of the office of Milton Adler, Legal Aid Society, entered the courtroom.)

\* \* \* \* \* \*

"THE COURT: This man has been in jail for six months. The district attorney is ready for trial. He's moving the case for trial on January the 4th.

Mr. Kiernan tells me Mr. Lipton is the one that contacted—

"MR. PECK: It wasn't on our calendar.

"MR. KIERNAN: It's been carried ready and passed every day.

"THE DEFENDANT: Right. This is the way it's been going for quite some time.

"MR. PECK: I'll tell Mr. Lipton about it.

"THE COURT: January 4th for trial.

Mr. Testamark says nobody comes in to talk to him.

\* \* \* \* \* \*

"THE COURT: I'm going to send him to Bellevue. I want somebody to see him.

\* \* \* \* \* \*

"THE DEFENDANT: Excuse me, your Honor. I would further ask if the Court can grant me a private attorney, if I'm to be further incarcerated, in order—because you say I'm ready for trial now. But if I'm ready for trial at this stage, how have things been going on?

"THE COURT: All right, notify the Appellate Division. Get him a lawyer.

"MR. KIERNAN: Judge—

"THE COURT: Look, he's complaining that nobody is doing anything prior to the trial. He says nobody spoke to him.

"MR. KIERNAN: That is just not true, because this defendant was brought out, and Mr. Lipton was here, and the case was marked ready for trial. Both sides answered "Ready."

This defendant wanted a nice little disposition, which he is not going to get, plain and simple.

So now, when the defendant knows that another Part will be ready, because it's the first day of the term, we go through this business of private counsel, Appellate Division.

"THE COURT: Tell Mr. Lipton to prepare for trial.

"THE DEFENDANT: Your Honor, this isn't true.

"THE COURT: All right, January 4th for trial.

Tell Lipton to speak to him.

\* \* \* \* \* \*

"THE DEFENDANT: Your Honor, I would appreciate this Court—as you was about to grant me a private attorney, because it's evident that the district attorney here doesn't want to see me have any type of defense whatsoever—

"THE COURT: Is Mr. Lipton familiar with it?

"THE DEFENDANT: How can he be familiar with it, your Honor, when the man has never come in to see me in the past eleven months?

"THE COURT: If he spoke to you once, he's familiar with it. He doesn't have to speak to you every day. That doesn't make him any more familiar with it. He speaks to the district attorney. That's what makes him familiar with it, with what's going to be the testimony here. That's what makes him familiar with it.

If it's you, and no other witnesses, then he's got you, and you may testify, if you want, or you may not. So you don't become too important as far as preparing a case is concerned. If you've got nothing to add to it and say you didn't do it, there you are. He's preparing the case. He knows what they will come up with.

"THE DEFENDANT: That's what the district attorney is saying, and I am not entitled to a counsel to defend me properly.

"THE COURT: He didn't say anything of the kind.

He said you've got a lawyer who is familiar with the case, who has already indicated to the court that he's ready.

No lawyer says he's ready if he isn't familiar with the case. How could he?

\* \* \* \* \* \*

"THE DEFENDANT: They're taking me to trial on a counsel that I've never seen before.

"THE COURT: That's what you say.

Tell Lipton to go in and see him. The case is marked ready for trial." (PTT no. 19 at 4–10.)

▉▉ Similar exchanges between petitioner and the trial judge occurred at trial. *See, e. g.*, Tr. at 2–6, 12–15a. In each instance, both judges failed to inquire, except in the most perfunctory

manner, whether petitioner's claims were indeed meritorious. It is the duty of a trial judge to protect the right of a defendant to enjoy the assistance of counsel. *See, e. g.,* Glasser v. United States, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942). When a defendant makes claims such as petitioner has in the instant case, it is the duty of a trial judge to make more than a superficial inquiry into the matter. United States v. Morrissey, 461 F.2d 666, 669 & n. 6 (2d Cir. 1972). Where, as here, this obligation is not met, sufficient grounds for reversal exist. United States v. Morrissey, *supra,* 461 F.2d at 670.

The Court also disputes respondent's contention that petitioner's sole purpose in requesting Appellate Division counsel was to delay the trial. As early as June 22, 1970, more than seven months prior to trial, petitioner attempted to secure more diligent counsel. Thus, respondent's claim is untenable. *See* United States v. Morrissey, *supra,* 461 F.2d at 669.

 Respondent further contends that petitioner does not have a constitutional right to counsel of his own choice. The Court agrees that such is the law. However, it is equally well settled that upon a showing of good cause an indigent is entitled to have assigned counsel replaced. *See, e. g.,* Brown v. United States, 105 U.S.App.D.C. 77, 264 F.2d 363, 366, cert. denied, 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959); Davis v. Stevens, 326 F.Supp. 1182, 1183 (S.D.N.Y.1971). In the light of Legal Aid's total failure to prepare for petitioner's defense, it appears to the Court that good cause did indeed exist and that, therefore, respondent's point is not well taken.

 Inadequate preparation is not the only indicia of the ineffectiveness of counsel. The Second Circuit has held that

"time consumed in oral discussion and legal research is not the crucial test of the effectiveness of the assistance of counsel. The proof of the efficiency of such assistance lies in the char-

acter of the resultant proceedings . . . . " United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

In the instant case, the conduct of assigned counsel at trial is the ultimate proof of the ineffectiveness of petitioner's representation. Although Mr. Lipton apparently requested that a suppression hearing be held, he did not ask one question of either of the witnesses that testified at the hearing, nor did he offer any argument in support of the motion at the close of the testimony. During the course of the trial itself, Mr. Lipton made no opening remarks, did not cross-examine any prosecution witnesses, did not object to any of the questions posed by the prosecution, did not offer any witnesses in petitioner's behalf and did not make any closing remarks to the jury. In short, Mr. Lipton did nothing.

"[Court appointed counsel] cannot stand still and do nothing. That indeed may be the best evidence of incompetency, or infidelity, or ineffectiveness, or all three." Williams v. Beto, *supra,* 354 F.2d at 706.

The Court hastens to note that Mr. Lipton's inactivity was prompted by petitioner's refusal to allow Legal Aid to represent him subsequent to the denial of his motion to have another attorney appointed. *See,* Tr. at 11–15a. Nevertheless, petitioner contends that the trial court never relieved Mr. Lipton of his duty to represent petitioner. The issue facing the Court then is whether petitioner waived his constitutional right to counsel. Indeed, the answer to this question is central to petitioner's application, for if petitioner did waive his right then Legal Aid's failure to prepare for his defense and Mr. Lipton's inactivity at trial become moot issues.

 The only passage in the trial transcript which even approaches a discussion of waiver of counsel is the following colloquy:

"THE COURT: I am advising the defendant now that if he doesn't wish this counsel to represent him that he

may represent himself. No other counsel will be assigned in this case.

And I will give him the alternative of being represented by Mr. Lipton of the Legal Aid Society or representing himself.

Which do you want?" (Tr. at 14–15.)

The petitioner did not respond to the question immediately. Instead, another argument over appointment of Appellate Division counsel ensued. However, a short time later, the following exchange took place:

"THE DEFENDANT: I do not wish to represent myself. I wish that a lawyer from the Appellate Division be assigned to this case. Those have been my wishes from the beginning of this case and they still stand. Let the record show, please. I refuse to participate in this case, in this trial.

"THE COURT: Let the record show that counsel has up to this point —that the defendant has conferred with his counsel—

"THE DEFENDANT: This man is not my counsel.

* * * * * *

"THE COURT: Either the defendant or his counsel may cross-examine this witness.

"THE DEFENDANT: I have no counsel to—representing me. And I do not wish to represent myself. I wish that an Appellate Division lawyer be assigned to this case. I keep saying it over and over again." (Tr. at 26, 28.)

■ It is clear that there was no formal waiver of counsel. Petitioner repeatedly stated that although he did not want Lipton as his attorney, he also had no intention of representing himself. While it is true that in certain cases such action may constitute an intelligent waiver of counsel—see, e. g., United States v. Tortora, 464 F.2d 1202 (2d Cir.), cert. denied, 409 U.S. 980, 93 S.Ct. 345, 34 L.Ed.2d 243 (1972); Leino v. United States, 338 F.2d 154 (10th Cir.

1964)—it is equally true that where, as here, petitioner

"has never enjoyed the benefit of counsel in the constitutional sense, a refusal to continue with such inadequate representation cannot be deemed a waiver of the constitutional right to counsel." Arellanes v. United States, 326 F.2d 560, 561 (9th Cir. 1964), cert. denied, 385 U.S. 870, 87 S.Ct. 139, 17 L.Ed.2d 97 (1966).

See also Williams v. Alabama, 341 F.2d 777, 781 (5th Cir. 1965).

This Court finds, therefore that petitioner did not waive his right to counsel either by his actions or by his words. However, the Court's inquiry is not ended.

"The determination of ineffective assistance of counsel is a two-step process. Once the defendant has made a prima facie showing that the assistance of counsel has been inadequate, we must consider whether there was sufficient prejudice to the defendant, under all the circumstances of the trial, as to make the proceedings a 'farce and mockery of justice.'" Massimo v. United States, 339 F.Supp. 519, 526 (S.D.N.Y.), aff'd, 463 F.2d 1171 (2d Cir. 1972).

In the instant case, respondent has argued that the evidence of petitioner's guilt is overwhelming. Indeed, the weight of the evidence moved the lone dissenting judge in Testamark's unsuccessful appeal to remark:

"Seldom has this Court examined a record where a defendant's guilt is so clearly demonstrated." People v. Testamark, supra, 40 A.D.2d at 646, 336 N.Y.S.2d at 483.

While in some cases such overwhelming evidence of guilt has caused a petitioner's application to be denied—see, e. g., Massimo v. United States, supra, 339 F. Supp at 527—the circumstances of the instant case lead this Court to grant petitioner's application.

■ In the first instance, the Court is of the opinion that effective assistance of counsel could have led to a dif-

ferent result as to at least two of the four counts upon which petitioner was ultimately convicted. Only two witnesses, the store owner and an employee, testified that they actually observed petitioner taking money out of the cash register. The other witnesses, including the customer who was receiving change at the time petitioner was reaching for the money, could not corroborate this claim. Although the store owner claimed the loss of two hundred dollars, no money was found on petitioner's person (although he was captured after a very short chase). Indeed, none of the stolen money was ever recovered with the exception of a single twenty-dollar bill lying near the store entrance. Furthermore, the store owner was insured for the loss of the stolen money.

In the light of the jury's inquiry regarding the necessity of proof of petitioner's actual possession of the money to find him guilty of petit larceny, it is not inconceivable that competent counsel could have limited petitioner's conviction to attempted robbery and attempted petit larceny. On the other hand, the Court concedes that the evidence adduced as to petitioner's guilt of the crimes of possession of a weapon and attempted assault in the second degree was truly overwhelming.

 Nevertheless, the Supreme Court has held "that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," and that the right to counsel is one of those rights. Chapman v. California, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The record of petitioner's trial shows that not only was he denied the right to effective counsel, but that the actions of the trial court were tantamount to a denial of the right to counsel itself. Under all of the circumstances of this case, the denial of those rights made the proceedings a "farce and mockery of justice."

Since the Court has determined that petitioner was deprived of his right to effective assistance of counsel, there is no need to discuss his remaining claims.

The petition is granted and, therefore, respondent is directed to release petitioner unless the State proceeds to retry him within sixty (60) days.

So ordered.

## MEMORANDUM

### ON MOTION FOR STAY

This case is before the Court on the motion of respondent, pursuant to Fed. R.Civ.P. 62(a), to stay the execution of judgment previously rendered in this case and on the cross-motion of petitioner, pursuant to Fed.R.App.P. 23(c) to enlarge him on bail pending appeal. For the reasons set out *infra*, both motions are denied.

By order of this Court, dated September 26, 1973, Testamark's petition for a writ of habeas corpus was granted and respondent was directed to release petitioner unless the State proceeded to retry him within sixty days. Respondent's motion seeks a stay of that order pending appeal of that decision to the United States Court of Appeals for the Second Circuit. Respondent makes two assertions in support of his motion. First, he claims that the question presented by the petition is one which has not yet been authoritatively resolved by the Second Circuit. The Court does not agree and, in this connection, refers respondent to the Second Circuit cases cited in the previous opinion.

 Respondent's second contention is that if the stay is not granted the case may be mooted before an appeal can be heard and decided. This Court is of the opinion that the Court of Appeals is in a much better position to determine whether or not it can hear and decide the appeal before respondent's time to retry petitioner has run. Respondent has the opportunity to allow the Court of Appeals to make that determination by moving, in the Court above, for a preference and/or a stay. Consequently, the motion for a stay is denied.

Petitioner, in support of his cross-motion for enlargement pending appeal, contends that it is within the discretion of the trial court whether or not to grant the request for enlargement and that there is a strong presumption in favor of petitioner's immediate release from State custody. Once again, however, this Court is of the opinion that the Court of Appeals is in a better position to pass upon the application since only it can determine the delay inherent in the appellate process. Therefore, petitioner's motion is denied so that the Court of Appeals will have jurisdiction, pursuant to Fed.R.App.P. 23(c), to hear his application.

Petitioner's application for leave to proceed in forma pauperis is granted.

So ordered.